UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- X
                                               :

UNITED STATES OF AMERICA         :

                                    :

           v.                   :        No. (S2) 13 Cr. 668 (ENV)

                                    :

REDINEL DERVISHAJ,           :

                                    :

                Defendant.    :

                                    :
---------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
REDINEL DERVISHAJ'S MOTION TO DISMISS
COUNTS THREE, SIX, AND NINE**

James Darrow
Michael Padden
Assistant Federal Defenders
Federal Defenders of New York, Inc.
One Pierrepont Plaza
16th Floor
Brooklyn, New York 11201
Tel. (718) 407-7419 | (718) 330-1240

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………... ii

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................3

  I.   JOHNSON RENDERS § 924(c)(3)(B) VOID FOR VAGUENESS ...............3

    A.  Section 924(c)(3)(B) Requires The Same Fatal "Ordinary Case" Analysis As The ACCA's Residual Clause.......................................................................3

    B.  The Government Misreads Johnson And Fails To Distinguish § 924(c)(3)(B) From The ACCA's Residual Clause .........................................5

      1.  The Absence Of Enumerated Offenses Does Not Save § 924(c)(3)(B) ..8

      2.  Under § 924(c)(3)(B), The Ordinary Case Analysis Is Neither Limited To The Elements Nor Otherwise "Narrower" Than Under The ACCA's Residual Clause ..............................................................................9

      3.  Before Johnson, The Same Level Of Confusion Surrounded Both Residual Clauses......................................................................................8

      4.  Any "Absurd Results" Result From Johnson's Elimination Of The Residual Clause ...........................................................................14

    C.  Johnson Makes Clear That Mr. Dervishaj May Bring A Facial Challenge 15

CONCLUSION ...................................................................................................16

# TABLE OF AUTHORITIES

## CASES

Begay v. United States, 553 U.S. 137
(2008)…………………………………………………………..………...4

Chambers v. United States, 555 U.S. 122
(2009)…………………………………………………………..……...4, 12

Descamps v. United States, 133 S. Ct. 2276
(2013)……………………………………………………….………1, 13

Dimaya v. Lynch, ___ F.3d ___,
2015 WL 6123546 (9th Cir. Oct. 19, 2015) …………………..…..……2, 6, 8

James v. United States, 550 U.S. 192
(2007)…………………………………………………………………4, 11

Jimenez-Gonzales v. Mukasey, 548 F.3d 557
(7th Cir. 2008) ……………………………………………..…………………4

Johnson v. United States 135 S. Ct. 2551
(2015)………………………………………………………………… passim

Leocal v. Ashcroft, 543 U.S. 1
(2004)……………………………………………………………………4, 12

Nash v. United States, 229 U.S. 373,
(1913)………………………………………………………..…………………6

Sykes v. United States, 131 S. Ct. 2267,
(2011)………………………………………………………..……………10-11

United States v. Acosta, 470 F.3d 132
(2d Cir. 2006) …………………………………………………………...1, 13

United States v. Brown, 629 F.3d 290,
(2d Cir. 2011)…………………………………………………..………….4

United States v. Daye, 571 F.3d 225,
(2d Cir. 2009)…………………………………………………..………….4

United States v. Gonzalez-Longoria, -- F.3d --, 2016 WL 537612
(5th Cir. Feb. 10, 2016) …………………………………………...passim

United States v. Stout, 706 F.3d 704,
(6th Cir. 2013)…………………………………………………...………….4

United States v. Taylor, -- F.3d --, No. 09-5517, 2016 WL 537444
(6th Cir. Feb. 11, 2016) …………………………………………...2, 6

United States v. Tsarnaev, 2016 WL 184389
(D. Mass. Jan. 15, 2016)…………………………………..………………12

United States v. Vivas-Ceja, 808 F.3d 719, 722-23
(7th Cir. 2015)............................................................................ 2, 14

Van Nguyen v. Holder, 571 F.3d 524,
(6th Cir. 2009)…………………………………………...…..………….4


## OTHER AUTHORITIES

18 U.S.C. § 16(b)…………………………………………………….passim

18 U.S.C. § 924(c)…………………………………………………….passim

Redinel Dervishaj respectfully submits this reply to the government's opposition to Mr. Dervishaj's motion to dismiss the § 924(c) Counts.

## INTRODUCTION

The following points are not in dispute:

- The government must demonstrate that each of Hobbs Act Counts qualify as a "crime of violence" within the meaning of § 924(c)(3), in order to state an offense under that statute.  (Gov't Br. 9-10; Def.'s Br. 1-2, 4).

- In determining whether these alleged predicates qualify, the Court must employ the formal "categorical approach."  (Gov't Br. 18; Def.'s Br. 11-12).  In other words, the Court must look "only to the statutory definitions—i.e., the elements—of a defendant's [offense], and not to [its] particular facts," Descamps v. United States, 133 S. Ct. 2276, 2283 (2013), and approve a potential predicate as qualifying only if the "minimum[] conduct necessary" to commit the predicate matches (or exceeds) the elements of the listed offense, United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006).

- The government does not argue that the Hobbs Act Counts qualify as "crimes of violence" under § 924(c)(3)(A), the force clause, and therefore it implicitly concedes they do not.  (Def.'s Br. 11-17).

- Cases addressing § 16(b) are equally applicable to § 924(c)(3)(B), because the language of the clauses are "identical."  (Gov't Br. 16-17; Def.'s Br. 9).

There is therefore only one issue for the Court to decide:  Whether the language of § 924(c)(3)(B) (and, by extension, its twin § 16(b)) is void for vagueness under Johnson v. United States, 135 S. Ct. 2551 (2015).  Just last week, the Circuits split on this question.  On February 10, 2016, the Fifth Circuit, in a detailed and thoughtful opinion, joined the Ninth and Seventh in ruling that § 16(b) (and thus § 924(c)(3)(B)) is fatally vague under Johnson.  See United States

v. Gonzalez-Longoria, -- F.3d --, 2016 WL 537612, at *1 (5th Cir. 2016); see also
United States v. Vivas–Ceja, 808 F.3d 719, 720 (7th Cir. 2015); Dimaya v. Lynch,
803 F.3d 1110 (9th Cir. 2015).  The next day, the Sixth Circuit went the other way
with respect to § 924(c)(3)(B) in United States v. Taylor, -- F.3d --, No. 09-5517,
2016 WL 537444 (6th Cir. Feb. 11, 2016).[1]

For the reasons set forth below and in Mr. Dervishaj's opening brief, this
Court should follow the weight of appellate authority, reject the government's
attempts to distinguish Johnson, and conclude that the residual clause of
§ 924(c)(3) is void for vagueness.  It should therefore dismiss the § 924(c)
Counts—Counts Three, Six, and Nine—because the essential "crime of violence"
element of those offenses cannot be proven, and therefore the charges fail to state
an offense.

---

[1] The question is pending decision by the Second Circuit in United States v. Elvin
Hill, No. 14-3872-cr (2d Cir.).

**ARGUMENT**

**I.    JOHNSON RENDERS § 924(c)(3)(B) VOID FOR VAGUENESS**

**A.    Section 924(c)(3)(B) Requires The Same Fatal "Ordinary Case" Analysis As The ACCA's Residual Clause**

The government concedes that courts must use the same type of "ordinary case" analysis in determining whether a felony qualifies as a crime of violence under § 924(c)(3)(B) as under the residual clause of the ACCA.  (Gov't Br. 18 & n.7).[2]  That is, it agrees that a court characterizing a predicate felony under this clause must first determine what the "ordinary case" of the felony entails in the abstract, without examining real-world facts—as it does when it categorizes felonies under the ACCA's residual clause.  (Def.'s Br. 5-6).

The government soft-pedals this concession by characterizing the ordinary case analysis as but one of several problematic features of the ACCA.  (Gov't Br. 12).  But this is wrong.  The ordinary case analysis, central to both residual clauses, is the core source of the "grave uncertainty" that doomed the ACCA in Johnson.  Just as the ordinary case inquiry brought down the ACCA's residual clause, so too it invalidates § 924(c)(3)(B).

Before discussing the details of the government's (failed) attempt to save § 924(c)(3)'s residual clause from the fate of its ACCA twin, a broader vantage is

---

[2] The government's argument that the ordinary case analysis is "narrower" in the § 924(c) context is addressed below.

illuminating:  Prior to <u>Johnson</u>, the two residual clauses were considered equivalent regarding the applicability of the categorical approach and the nature of the requisite analysis.  Thus, the Supreme Court repeatedly treated § 16(b), identical to § 924(c)(3)(B), as the functional equivalent of the ACCA's residual clause.  In performing or describing ordinary case analysis under the ACCA, the Court cited <u>Leocal v. Ashcroft</u>, 543 U.S. 1 (2004), in which the Court conducted a similar analysis under § 16(b).[3]  <u>See</u> <u>Begay v. United States</u>, 553 U.S. 137, 143, 145 (2008); <u>James v. United States</u>, 550 U.S. 192, 216, 219, 224 (2007) (Scalia, Stevens & Ginsburg, JJ., dissenting); <u>see also</u> <u>Chambers v. United States</u>, 555 U.S. 122, 133 n.2 (2009) (Alito & Thomas, JJ., concurring) (citing cases under § 16(b) because it "closely resembles ACCA's residual clause").  The courts of appeal did the same.[4]

---

[3] <u>Leocal</u>, in turn, invoked ACCA precedent in determining whether the predicate offense there was a "crime of violence" under § 16(b)'s residual clause.  543 U.S at 10.

[4] <u>See, e.g.</u>, <u>United States v. Daye</u>, 571 F.3d 225, 234 n.8 (2d Cir. 2009) ("[W]e find examination of our previous analysis of § 16 (b) to be helpful in applying § 924(e)(2)(B)(ii), particularly in light of the similar standards articulated by the Supreme Court in <u>Leocal</u> and <u>Begay</u>."); <u>United States v. Brown</u>, 629 F.3d 290, 295 (2d Cir. 2011) (same); <u>Jimenez-Gonzalez v. Mukasey</u>, 548 F.3d 557, 562 (7th Cir. 2008) ("Despite the slightly different definitions" in the residual clauses of the ACCA and § 16(b), "the Supreme Court's holding in <u>Begay</u> perfectly mirrored the analysis in <u>Leocal</u> regarding whether drunk driving was a crime of violence."); <u>United States v. Stout</u>, 706 F.3d 704, 708-09 (6th Cir. 2013); <u>Van Nguyen v. Holder</u>, 571 F.3d 524, 529-30 (6th Cir. 2009).

Thus, it was no surprise that the Solicitor General in its brief to the Supreme Court in <u>Johnson</u> expressly acknowledged that § 16(b) "is equally susceptible to petitioner's central objection to the residual clause," that it was unconstitutionally vague, because, "[l]ike the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense."  Supp. Br. of the United States, <u>Johnson v. United States</u>, 2015 WL 1284964, at *22-23 (Mar. 20, 2015).  This concession alone is sufficient to reject the government's remaining arguments.

## B.   The Government Misreads <u>Johnson</u> And Fails To Distinguish § 924(c)(3)(B) From The ACCA's Residual Clause

Despite recognizing that courts must use the same doomed "ordinary case" inquiry under § 924(c)(3)(B) as under the ACCA, the government contends that the former is not void for vagueness, for three principal reasons.  First, it notes that § 924(c)(3)(B) does not include the ACCA's prefatory list of enumerated offenses and therefore does not require comparing the ordinary predicate felony.  (Gov't Br. 13-15).  Second, it claims that this residual clause is "narrower" than the ACCA's, in that it (1) does not go beyond the elements of the offense to consider potential extra-offense conduct and (2) ponders the risk that physical force might be used rather than (the allegedly broader and more nebulous) risk that physical injury might result.  (<u>Id.</u> at 15-16, 17-19).  Third, the Government claims that there has not been the same degree of confusion in the courts concerning this residual clause as opposed to the ACCA's.  (<u>Id.</u> at 16-17).

These arguments fail.   See <u>Gonzalez-Longoria</u>, 2016 WL 537612, at *6-*8 (rejecting these same arguments and holding that § 16(b), identical to § 924(c)(3)(B), is void for vagueness under <u>Johnson</u>); <u>Dimaya</u>, 803 F.3d at 117-19 (same).  <u>Johnson</u> held that courts cannot discern the "ordinary case" of the predicate offense with any certainty, let alone predictability.  Neither Google, common sense, statistics, nor experts can identify with sufficient precision what the ordinary case of a crime entails.  135 S. Ct. at 2557; (<u>see also</u> Def.'s Br. 4-7).[5]

---

[5] The Sixth Circuit's recent opinion in <u>Taylor</u> reads <u>Johnson</u> as having "explicitly refrained from flatly invalidating [the ordinary case] analysis."  2016 WL 537444, at *35.  This is a blatant misreading of <u>Johnson</u>.  In the very pages cited by <u>Taylor</u>, the <u>Johnson</u> opinion distinguishes laws that merely incorporate a "substantial risk" standard—which it refrained from invalidating—from laws that incorporate a fatal "ordinary case" analysis—like ACCA's residual clause, which are void for vagueness:

> More importantly, almost all of the cited laws require gauging the riskiness of conduct in which an individual defendant engages <u>on a particular occasion</u>.  As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; "the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree," <u>Nash v. United States</u>, 229 U.S. 373, 377, 33 S.Ct. 780, 57 L.Ed. 1232 (1913).  <u>The residual clause, however, requires application of the "serious potential risk" standard to an idealized ordinary case of the crime</u>.  Because "the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect," this abstract inquiry offers significantly less predictability than one "[t]hat deals with the actual, not with an imaginary condition other than the facts."

<u>Johnson v. United States</u>, 135 S. Ct. at 2561 (second emphasis added).

Most offenses involve a broad variety of factual scenarios, and a court simply is not equipped to "discern where the 'ordinary case' . . . lies" along this spectrum.  Id.  This is true for both residual clauses.  And Johnson's conclusion that it is an impossible task for a court to picture the ordinary case of the predicate crime applies to both clauses.

Nothing cures this fundamental, core defect.  If a court cannot determine the ordinary case of the predicate offense in the first place, it cannot even progress to the next step of categorizing the offense.  Thus, it makes no difference that enumerated offenses in the statute may serve as a point of comparison in subsequently determining whether the ordinary case of the predicate offense is sufficiently risky.

Indeed, a court cannot even reach the stage of figuring the type or degree of risk entailed in the ordinary case of a predicate offense—whether it be the risk of injury (as under the ACCA) or the risk that force will be used—if it cannot picture the ordinary case in the first place.  Thus, the alleged "narrowness" of the risk inquiry in § 924(c)(3)(B) is irrelevant.

Finally, because courts have applied precedent on the ACCA's residual clause to cases involving § 924(c)(3)(B) (and its twin, § 16(b)), confusion about those laws is subsumed within confusion about the ACCA's residual clause.

1.      The Absence Of Enumerated Offenses
        Does Not Save § 924(c)(3)(B)

Johnson did not hinge on the list of enumerated offenses that precedes the

residual clause in the ACCA.  The ordinary case problem exists in any event.  As

the Court recognized, the list bears only on the determination of "how much risk it

takes for a crime to qualify as a violent felony."  135 S. Ct. at 2558.  But a district

court must first determine the "idealized ordinary case" of the predicate offense

before it can even begin to evaluate the type and level of risk presented by that

offense.  Id. at 2557.  And because a court cannot answer the threshold question

with any certainty, a court also cannot proceed with the rest of the analysis.  This is

true of both residual clauses.

The government is correct that Johnson noted the existence of the

enumerated offenses in parrying Justice Alito's dissent.  (Gov't Br. 14).  But the

Court made clear that the ordinary case problem is the central distinguishing

feature:  "More importantly, almost all of the cited laws require gauging the

riskiness of conduct in which an individual defendant engages on a particular

occasion . . . .  The residual clause, however, requires application of the 'serious

potential risk' standard to an idealized ordinary case of the crime."  Id. at 2561

(emphasis added); see also Dimaya, 803 F.3d at 1117-18.

Indeed, the absence of enumerated offenses in § 924(c)(3)(B) actually cuts

against the government.  Their presence in the ACCA at least offered some

benchmark for quantifying risk, though it did not suffice to rescue the residual clause.  Section 924(c)(3)'s residual clause, on the other hand, provides no benchmark whatsoever.  Thus, quantifying risk here is even more abstract, lacking any point of comparison.  *See Gonzalez-Longoria*, 2016 WL 537612, at *6 ("Arguably, having no examples is worse than having unclear examples.").

2.   Under § 924(c)(3)(B), The Ordinary Case Analysis Is Neither Limited To The Elements Nor Otherwise "Narrower" Than Under The ACCA's Residual Clause

The government errs in asserting that ordinary case analysis under § 924(c)(3)(B) "does not go beyond the elements of the offense" and thus is "narrower" than under the ACCA's residual clause.  A different provision, the force clause of § 924(c)(3)(A), qualifies a predicate felony as a crime of violence based solely on its legal elements.  (See Def.'s Br. 12).  This mirrors the ACCA, in which the residual clause is also paired with a force clause that turns exclusively on the elements of the predicate crime.  Under both statutes, once the inquiry extends beyond the force clause and the strictly legal elements of the predicate offense, and into what constitutes the "ordinary case" of its commission, as required in both residual clauses, the inquiry becomes hopelessly and unconstitutionally indeterminate.

The government also claims that § 924(c)(3)(B) is temporally narrower than the ACCA's residual clause because it looks to the risk of force only in the course

of committing the offense.  But, like the absence of enumerated offenses, *see* Section I.C *supra*, this has no bearing on the threshold inquiry that the Supreme Court determined is impossibly arbitrary, the determination of what the "ordinary case" of the predicate crime looks like at the outset of its commission.  Johnson, 135 S. Ct. at 2557.  Federal courts have no reliable standard for deciding whether, for example, "the ordinary instance of witness tampering involve[s] offering a witness a bribe [o]r threatening a witness with violence."  Or whether "the ordinary burglar invade[s] an occupied home by night or an unoccupied home by day."  Or (as relevant to this case) whether "the typical extortionist threaten[s] his victim in person with the use of force, or by mail with the revelation of embarrassing personal information."  Id. at 2557-58.  Or whether the "ordinary case of vehicular flight" is "the person trying to escape from police by speeding or driving recklessly" or "the person driving normally who, for whatever reason, fails to respond immediately to a police officer's signal."  Sykes v. United States, 131 S. Ct. 2267, 2291 (2011) (Kagan & Ginsburg, JJ., dissenting).  If a court cannot hypothesize the "idealized" "typical" category in which an offender embarks on a predicate crime, it cannot proceed to determine how an offense is likely to "play[] out," and thus cannot gauge the riskiness of the probable ensuing conduct. Johnson, 135 S. Ct. at 2558.

In any event, by focusing on the risk during the predicate offense, § 924(c)(3)(B) does not call for any narrower inquiry than does the ACCA's residual clause.  The Supreme Court's prior determination of whether certain crimes were sufficiently risky under the ACCA also focused on the risk during the commission of the offense, rather than at some time later after it had ended.  See, e.g., James, 550 U.S. at 203-04 & 210 (looking to conduct that typically occurs while the crime [attempted burglary] is "in progress," "while the break-in is occurring," and "during attempted burglaries"); Sykes, 131 S. Ct. at 2273-74 (same).

Likewise, the supposedly "typical" conduct that the Court found sufficiently risky in the ACCA cases now repudiated by Johnson involved the kind that occurs during the predicate crime, rather than some time later.  See, e.g., James, 550 U.S. at 211-12 ("An armed would-be burglary may be spotted by a police officer, a private security guard, or a participant in a neighborhood watch program.  Or a homeowner . . . may gave chase"); Sykes, 131 S. Ct. at 2274 (driver's knowingly fleeing from law enforcement officer held a violent felony given risk that, during the pursuit, driver might cause accident or commit another crime to avoid capture).

In no case did the Supreme Court actually rely on "post-offense conduct" to find a predicate offense sufficiently risky under the ACCA's residual clause.  Indeed, it expressed doubt about whether that would ever be a statutorily

11

permissible basis to qualify an offense as a "crime of violence." Chambers, 555 U.S. at 128 (questioning, though assuming for argument's sake, "the relevance of violence that may occur long after" crime of failing to report to penal confinement is complete).

To be sure, the Supreme Court described the ACCA inquiry as one that goes "beyond evaluating the chances that the physical acts that make up the crime will injure someone," and the Court cited burglary as an example where the "risk of injury arises because the burglar might confront a resident in the home after breaking and entering." Johnson, 135 S. Ct. at 2557. (See Gov't Br. 15). But in assessing riskiness, § 924(c)(3)(B) and its twin, § 16(b), just like the ACCA, look not just at the initiation of the predicate crime (e.g., the burglar's climbing through the window), but beyond that, through the entire "course" of the offense to its completion (e.g., while the burglar is in the house, until he successfully flees). See Leocal, 543 U.S. at 10 ("A burglary would be covered under § 16 (b) because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime."); see also Gonzalez-Longoria, 2016 WL 537612, at *8 ("Just as the risk of injury in burglary frequently occurs after the breaking and entering, so too does the risk of physical force.").[6]

---

[6] The government also relies upon the district court's decision in United States v. Tsarnaev, 2016 WL 184389 (D. Mass. Jan. 15, 2016), which distinguishes the residual clause of ACCA from § 924(c)(3) on the ground that the latter is a

3.    Before <u>Johnson</u>, The Same Level of Confusion Surrounded
      <u>Both Residual Clauses</u>

The government claims that unlike the ACCA's residual clause,

§ 924(c)(3)(B) is not mired in confusion.  (<u>See</u> Gov't Br. 16-17).  This claim is

based on the assertion that while several dissenting opinions before <u>Johnson</u>

criticized the ACCA's residual clause, no such opinion exists regarding

§ 924(c)(3)(B) (or § 16(b)).

The flaw in this argument is that cases addressing the latter residual

clause(s) regularly relied on ACCA cases, and vice-versa.  <u>See</u> <u>supra</u>.  Courts use

the same body of precedent.  Thus, controversy surrounding the ACCA necessarily

---

separate crime alleged in the same indictment, and concluded that, as a
consequence, "consulting the specific allegations of the indictment is
unavoidable," calling for a "modified categorical approach" in all such cases.
(Gov't Br. 19-21).  Whatever the supposed merits of this logic, it is unavailable to
the government here, because binding Second Circuit precedent holds that, when
considering § 924(c) charges of a separate crime in the same indictment, the
district court must "focus on the intrinsic nature of the offense <u>rather than on the
circumstances of the particular crime</u>."  <u>United States v. Acosta</u>, 470 F.3d 132, 135
(2d Cir. 2006) (per curiam) (emphasis added).  Indeed, the government tellingly
does not appear to argue that the modified categorical approach applies in <u>this</u>
case.  And in any event, a modified categorical approach cannot <u>ipso facto</u> cure the
fatal uncertainty inherent in the "ordinary case" analysis:  such an approach
permits a court to consult certain documents in the case <u>only</u> to determine which
among alternative elements "formed the basis of the defendant's prior
conviction"—at that point, the court just does "what the categorical approach
demands," <u>i.e.</u> consult only "the <u>elements</u> of the crime of conviction."  <u>Descamps
v. United States</u>, 133 S. Ct. 2276, 2281 (2013) (emphasis added).  As applied to the
residual clause of § 924(c)(3)  924(c)(3), that is the very "ordinary case" inquiry
prohibited by <u>Johnson</u>.

reflects difficulties with § 924(c)(3)(B) as well, even absent the same explicit chorus of criticism.  Thus, confusion about the meaning of this residual clause is subsumed in the confusion surrounding the ACCA's.

Finally, and in any event, "[t]he chaotic state of the case law was not a necessary condition to the Court's vagueness determination" in Johnson.  Vivas-Ceja, 808 F.3d at 723; see also Gonzalez-Longoria, 2016 WL 537612, at *8 ("judicial disagreement provides evidence of imprecision" but "does not create it").

4.    Any "Absurd Results" Result From Johnson's Elimination Of The Residual Clause

The government attempts to resist the straightforward application of Johnson by invoking the specter of "absurd results."  (Gov't Br. 21).  In particular, citing numerous pre-Johnson cases relying on the residual clause, the government observes that conspiracy and attempt crimes intending to commit substantive crimes of violence will now not count as crimes of violence themselves.  (Id. at 21-22).  This rhetoric has superficial appeal.  But the oddity of our argument does not flow from its internal logic or its support by binding precedent.  Rather, it results from Johnson's invalidation of the residual clause, combined with an application of the categorical approach.

The residual clause in both the ACCA and § 924(c)(3) was intended to do (and previously did) meaningful work in expanding the definition of a "crime of violence" (or "violent felony") beyond the limited reach of the strict, elements-

14

based force clause.  See Johnson, 559 U.S. at 142.  Indeed, Congress designed the two clauses to work together in defining the totality of crimes constituting crimes of violence.  And given the wide sweep of the broadly worded residual clause, numerous conspiracy offenses previously qualified as crimes of violence under that clause under formerly applicable Second Circuit precedent.

After Johnson eliminated the residual clause, therefore, the universe of crimes of violence became much smaller.  What remains of the definition of crime of violence is a fraction of what Congress intended.  The government's rhetoric about "absurd results"—and its citation to cases decided before Johnson—ignores the seismic event of the Supreme Court's decision.  Any "absurdity" of the results here is not a symptom of unsoundness but results from the fact that only a portion of the governing statute still stands.  The government may not like the post-Johnson world.  But its desired remedy lies with Congress, not the courts.  And until Congress rewrites § 924(c)(3) to encompass crimes like Hobbs Act conspiracy and attempt, this Court's role is to interpret the statute in light of binding precedent.

C.    **Johnson Makes Clear That Mr. Dervishaj May Bring A Facial Challenge**

The government argues that Mr. Dervishaj's challenge cannot succeed unless he can show that § 924(c)(3)(B) is vague as applied to the particular predicate offenses in his case.  (Gov't Br. 25-26).  The Supreme Court rejected this

15

exact argument in <u>Johnson</u>.  The Court held the residual clause void for vagueness on its face, without determining first if it was vague as applied to that defendant. And in response to Justice Alito's dissenting criticism that the Court should have used an "as applied" approach—the same argument the government makes here— the Court explained that such a hopelessly indeterminate statute is unconstitutional even if "there is some conduct that clearly falls within the provision's grasp."  135 S. Ct. at 2561; <u>see also</u> <u>Gonzalez-Longoria</u>, 2016 WL 537612, at *3.

## CONCLUSION

For the reasons set forth above, and in Mr. Dervishaj's opening brief, the § 924(c) Counts should be dismissed for failure to state an offense.

Dated:  February 18, 2016
      Brooklyn, New York         Respectfully submitted,

                                       /s James Darrow

                                       James Darrow
                                       Michael Padden
                                       Assistant Federal Defenders
                                       Federal Defenders of New York, Inc.
                                       Tel. (718) 407-7419 | (718) 330-1240
                                       Fax: (718) 855-0760
                                       james_darrow@fd.org
                                     michael_padden@fd.org

                                     *Attorneys for Redinel Dervishaj*